IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOHN C. KING,  Civ. No. 10-1237-AC

        Plaintiff,  OPINION AND ORDER

  v.

TOWN & COUNTRY CHRYSLER, INC.,

        Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff John C. King ("King") alleges eight claims against Defendant Town & Country Chrysler, Inc. ("Town and Country") arising from King's employment by Town and Country. King alleges several claims arising under state and federal anti-discrimination laws, as well as a common

OPINION AND ORDER      1      {KPR}

law claim for negligence. Town and Country has moved to stay this matter and compel the parties to submit to arbitration pursuant to the parties arbitration agreement. For the reasons below stated, the court grants Town and Country's motion, staying the current action and compelling the parties to arbitration.

*Factual Background*

King, an African-American male, was hired by Town and Country on January 10, 2008. (Complaint ("Compl.") ¶ 4.) On January 16, 2008, in the course of completing his employment paperwork, King signed an arbitration agreement with Town and Country. (Defendant's Memorandum in Support of its Motion to Stay and Enforce Arbitration, Exhibit A.) The agreement stated:

> the Company and I agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the Oregon Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, as amended, or any other State, local or federal laws or regulations) that either I or the Company . . . may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Oregon Arbitration Act.

*Id*. The agreement also stated, in bolded typeface and at the bottom of the page,

> **I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY OF ANY CLAIM I OR THE COMPANY MAY HAVE AGAINST EACH OTHER.** I hereby acknowledge that I have read the above Statement and understand the same. **DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT.**

*Id.*

According to King, he was given the arbitration agreement in a stack of paperwork with the implication that he must complete the paperwork in order to begin work. (King Affidavit ("King

Aff.") ¶ 7.) He did not have an opportunity to review the agreement or discuss it with an attorney. (King Aff. ¶ 8.)

Town and Country terminated King's employment on May 5, 2010. King alleges that, during the course of his tenure with Town and Country, he was subjected to discrimination based on race, a hostile work environment, retaliation for protected activity, and that Town and Country was negligent in its duty to provide a safe work environment.

*Legal Standard*

The Federal Arbitration Act ("the FAA") establishes the validity and enforceability of agreements to arbitrate disputes arising out of contract, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2008). As a general principle, the Supreme Court has held that arbitration agreements in employment contracts are valid and enforceable. *See Circuit City Stores v. Saint Clair Adams*, 532 U.S. 105, 119 (2001) (the exemption in the FAA for employment contracts extends only to those of transportation workers).

"Evaluating a motion to compel arbitration requires a court to determine: '(1) whether a valid agreement exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Simpson v. Lifestyles, LLC*, 2008 WL 1882838, at *2 (D. Or. Apr. 24, 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the agreement is valid and encompasses the dispute, the court must "enforce the arbitration agreement in accordance with its terms." *Id.* Furthermore, there is "a presumption in favor of arbitrability." *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or. App. 137, 147, 227 P.3d 796 (2010).

An otherwise valid arbitration clause may be found unconscionable and, thus, unenforceable. This is a question of law to be determined by the court and is "based on the facts in existence at the

time the contract was made." *Id.* at 151 (citing *Best v. U.S. National Bank*, 303 Or. 557, 560, 739 P.2d 554 (1987)). Contract terms are evaluated for both procedural and substantive unconscionability, and the party asserting it bears the burden of demonstrating unconscionability. *Simpson*, 2008 WL 1882838, at *9.

*Discussion*

I.      Contract Formation

King argues that the arbitration agreement did not represent a meeting of the minds because he was forced to sign the agreement as a condition of employment, and because Town and Country was neither named nor signed the agreement. For this lack of genuine agreement, King assert that the arbitration agreement is not enforceable.

"[T]he court must apply Oregon contract law to resolve questions concerning formation of the [a]greement." *Bettemcourt v. Brookdale Senior Living Communities, Inc.*, No. 09-CV-1200-BR, 2010 WL 274331, at *3 (D. Or. Jan. 14, 2010). "Under Oregon law, '[c]ontract formation requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" *Citizens for Constitutional Fairness v. Jackson County*, 2008 U.S. Dist. LEXIS 92049 (D. Or. Nov. 12, 2008) (quoting *Ken Hood Constr. Co. v. Pacific Coast Constr., Inc.*, 201 Or. App. 568, 578, 120 P.3d 6 (2005)).

A similar argument was raised in *Seres v. Drexel Burnham Lambert Inc.*, Civ. No. CV08-0628-PA, 1988 WL 156288 (D. Or. Oct. 31, 1988), and was rejected by Judge Panner. In that case, the defendants had moved to compel arbitration based on an arbitration agreement that was signed by the plaintiff, but "neither was dated or signed" by the defendants. *Id.* at *1. The court was not persuaded by the plaintiff's argument: "Plaintiff, the party to be charged with the contractual

obligations, acknowledges that he signed the agreement. Defendant Drexel readily admits that it is bound by the agreement." *Id.* at *3. This is similar to the present matter. King, the party against whom the agreement is sought to be enforced, signed the agreement and Town and Country does not dispute that it is bound by the agreement. The fact that Town and Country did not sign the arbitration agreement does not render it unenforceable.

King also argues that Town and Country was not identified as the other party to the contract, which party was referred to only as "the Company." The court is not persuaded that, as a result, the agreement lacks mutuality. First, the agreement was presented to King by Town and Country as one of a series of documents he would need to review and sign as part of his employment relationship with Town and Country. King does not claim that he understood "the Company" to be an entity other than Town and Country at the time he signed the agreement. Second, King does not argue that he was confused as to what entity "the Company" referred to or that there was actual divergence in the understanding of the parties at the time the contract was signed.

In the absence of persuasive evidence that there was no meeting of the minds at the time the arbitration agreement was formed, the court concludes that it is, from the standpoint of formation, an enforceable agreement.

II.   Unconscionability

  *A. Procedural Unconscionability*

In determining whether an arbitration clause is procedurally unconscionable, a court focuses on the twin factors of oppression and surprise. *Sprauge v. Quality Restaurants Northwest, Inc.*, 213 Or. App. 521, 525, 162 P.3d 331 (2007) (citations omitted). "'Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.

Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms.'" *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 566, 152 P.3d 940 (2007) (quoting *ACORN v. Household Intern., Inc.*, 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002)). Oregon courts have held that "a contract of adhesion – an agreement presented on a take-it-or-leave-it basis – reflects unequal bargaining power, but the adhesive nature of a contract standing alone is insufficient to render an agreement procedurally unconscionable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094 (9th Cir. 2009).

As courts have widely noted, a contract signed by an employee as a condition of employment is, by its nature, a contract of adhesion. The arbitration agreement signed by King qualifies as a contract of adhesion. As King asserts and Town and Country does not dispute, it was presented as a condition of his employment, and the circumstances of its presentation did not include an opportunity for negotiation or meaningful choice. The "oppression" prong is therefore satisfied.

The element of surprise, however, is not implicated by the arbitration agreement currently at issue. The agreement consisted of a single page of text separate from the other documents King signed the day he began work. The title, clearly set forth in bold, underlined, and all-caps text, states "**ARBITRATION AGREEMENT**." The language of the agreement is relatively straightforward and clearly communicates the claims that will be subject to arbitration. The final sentence of the body of the arbitration agreement states in plain language and all boldface capital letters that, in signing the agreement, the employee is "**AGREEING TO THIS BINDING ARBITRATION PROVISION**," and "**THE RIGHT TO TRIAL BY JURY**." The form and content of the arbitration agreement is conspicuous and lacks any element of surprise. Thus, the agreement signed by King meets the standard for procedural unconscionability only in that it was signed without

meaningful negotiation or choice.

    B.    *Substantive Unconscionability*

King argues that the arbitration clause is substantially unconscionable because it does not address the manner in which arbitration costs and fees will be split by the parties. "Substantive unconscionability arises from a substantial disparity in bargaining power, combined with terms that unreasonably favor the powerful party. But Oregon courts are 'reluctant to declare contractual provisions per se unconscionable, even among parties of unequal bargaining power.'" *Briede v. 24 Hour Fitness, USA, Inc.*, Civil No. 10-649-HA, 2010 WL 4236929, at *4 (D. Or. Oct. 21, 2010) (citing and quoting *Livingston*, 234 Or. App. at 806).

"An arbitration agreement is unenforceable under the FAA if it denies a litigant the opportunity to vindicate his or her rights in the arbitral forum." *Vasquez-Lopez*, 210 Or. App. at 573 (citing *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)). Thus, where the cost provisions of an arbitration agreement effectively foreclose review of a plaintiff's claim, that agreement is substantively unconscionable. "Under Oregon law, an arbitration agreement requiring an employee to pay arbitrator's fees is invalid." *Derrick v. Santa Fe Natural Tobacco Co.*, Civil No. 07-631-HA, 2007 WL 2994598, at *3 (D. Or. Oct. 12, 2007) (quoting *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 874 (D. Or. 2002)). However, the fact that an arbitration clause is silent on fee allocation does not alone render it unconscionable. *Id*. at *10.

Where the arbitration agreement is not silent on fee allocation, the plaintiff must make a showing that the cost of arbitration would be prohibitively high. In *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 618, 156 P.3d 156 (2007), the plaintiff had not presented evidence as to "the likely costs of arbitration or the potential impact of those costs on [the plaintiff]." The Oregon Court

of Appeals declined to invalidate an "arbitration clause simply because of the possibility that plaintiff, if she were to lose, would bear some undetermined costs of arbitration." *Id.* There, the arbitration clause provided that the prevailing party would be entitled to costs expended in the arbitration. In *Vasquez-Lopez*, however, the Court of Appeals found an arbitration provision unconscionable based on a cost-sharing provision. The court noted that "[d]enial of an arbitral forum occurs when the cost of arbitration is large in absolute terms, but also, comparatively, when that cost is significantly larger than the cost of a trial[.]" 210 Or. App. at 574. There, the plaintiffs' "uncontradicted affidavit demonstrat[ed] that, by the second hour of the second day of arbitration, they would owe $1,000 in arbitration fees and that, with their current earnings and expenses, they would need six months to save that amount of money." *Id.* at 572.

In this case, the arbitration agreement provides that claims are to "submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Oregon Arbitration Act" and that "[r]esolution of the dispute shall be based solely upon the law governing the claims and defenses set forth in the pleadings, and the arbitrator may not invoke any basis . . . other than such controlling law." *Id.* As to arbitration fees and expenses, the Oregon Arbitration Act ("the OAA") states that an arbitrator may award such fees and expenses as specified in the arbitration agreement "if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding." OR. REV. STAT. 36.695(2) (2008).

At least some of King's claims have the potential to give rise to an award of costs and attorney fees, by extension costs and fees for arbitration, to the prevailing party. For claims arising under Title VII, i.e., King's section 1981 discrimination claim, the court may award attorney fees to

the prevailing party. *See* 42 U.S.C. § 1988(b) (for any claim arising under section 1981 "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . ."). Oregon law also authorizes attorney fees for claims arising under ORS 659A.030. *See* OR. REV. STAT. 659A.885(1)-(2) (2008) (authorizing a civil action and reasonable costs and attorney fees to the prevailing party for claims arising under, among many others, ORS 659.030.). As such, if King were unsuccessful in his lawsuit, he could be liable for substantial costs and fees arising from the discrimination and retaliation claims depending on the rate charged and the length of the arbitration proceeding.[1]

Even so, King's evidence and argument as to the potential cost of arbitration is speculative and does not establish substantive unconscionability. His estimate is based on a three-day hearing that could cost him a minimum of $2,400 to upwards of $5,000 in expense above and beyond the cost of a jury trial. King bases his figures on documents from three local arbitration services, but these figures are limited to the hourly rates charged and do not otherwise support King's estimate. Here, while the cost and fee provisions of the arbitration agreement have potential to impact King in such a way as to frustrate his ability to bring such claims, the expected cost of the arbitration, and the financial impact on King are not established nor, for that matter, is that King actually will be precluded from bringing his claim to arbitration. Thus, the court has insufficient basis upon which to declare the arbitration agreement void as unconscionable.

II.   Stay or Dismissal

The court may "upon application by one of the parties, [] grant a stay pending arbitration but

---

[1] King's risk of actually having to pay Town and Country's attorney fees is minimal, however, given the higher bar for attorney fee awards to prevailing defendants compared to prevailing plaintiffs.

also may dismiss all claims barred by an arbitration clause." *Morrow Equip. Co., LLC v. Baker Concrete Constr., Inc.*, CV-09-1335-ST, 2010 U.S. Dist. LEXIS 117179, at *14 (D. Or. June 8, 2010) (citing *Sparling v. Hoffman Contr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)).

Here, the parties agree that a stay is preferable to a dismissal and the court should stay the proceedings pending compliance with the terms of the arbitration agreement. *See Le v. Gentle Dental of Oregon*, CV No. 09-1352-AC, 2010 WL 3394542, at *11 (D. Or. July 29, 2010) (granting a stay where the both parties requested a stay).

## Conclusion

For the reasons stated, the arbitration agreement is valid and should be enforced according to its terms. Town and Country's motion to stay and enforce arbitration is GRANTED.

DATED this 21st day of March, 2011.

        /s/  John V. Acosta
        JOHN V. ACOSTA
        United States Magistrate Judge